2-2759 People v. Trent Hamerlinck Wood 2-2759 People v. Wood 2-2759 People v. Wood 2-2759 People v. Wood The sole defense is that he was not the driver, is that correct? It was just, as far as defense counsel was concerned, a question of who was driving the car. And you think, though, that after all is said and done, that that's plain error? Yeah. I mean, the blood, there's no testimony regarding what's on the label. As a result of that, the testimony is just that the blood goes into the tube station, it disappears, and the result comes back later. There's nothing in the testimony about what was on the label that you can compare to anything in the records of the test result that came back. It is, as was set forth in Woods, a complete breakdown in the chain of custody over that period. Why is it a complete breakdown? There's simply nothing in the evidence at all that allows you to conclude that it's more likely than not that blood received by the lab and tested was the particular blood that was sent in this instance. I mean, there's lots of blood circulating around in the hospital, and you have to take some sort of effort to present evidence regarding which particular blood it is that was tested. If there had been, you know, like a smaller issue, you know, if somebody testified as to, you know, the label they placed on there and said, yeah, the name was Trent Hamerluck or something like that, then you'd be in the territory of, say, People v. Alsup, where it was held not to be a complete breakdown in the chain of custody, where there's a slight. But here, there's no eyeballs on where the blood goes, there's no evidence regarding what's on the label of the blood, and the circumstances aren't such that you can guess that it's probably the same blood without that kind of additional information. I thought there was testimony that it went through the tube station. Now, Taylor's testified that it usually goes by tube station and that the nurse sent it. So a fair construction of that is probably he saw her put it in the tube station and possibly saw somebody come by and remove the blood sample from the tube station. After that, it's in the hospital somewhere, and there's no direct evidence or, you know, circumstantial evidence as to what happened to it. You mentioned that the first time defense counsel talked about that the only issue was one of driving was at the close of the case. The first time I found that was when there was a hearing on the directed finding. Defense counsel said, and so far we have heard testimony that my client was tested at a hospital and his blood alcohol was 2.50, a little bit more, trial court right, defense counsel all well and good, Judge. What the state has done, which is an essential component, is to prove that my client, while he had this blood alcohol, was driving. So it was brought out before the closing argument, wasn't it? Correct, Your Honor. And then the second time, the second time defense counsel said they were able to establish my client had a breath alcohol concentration over the legal limit, but they did not again, did not establish a prima facie case that he was driving. That's the only issue, according to defense counsel. And then at the closing, the state presented evidence showing that my client had a BAC over the legal limit. That's not a dispute, Judge. That's what defense counsel said. That's not a dispute. It seems that the only dispute is now in the appellate court. Correct. Well, by that point, Your Honor, the court had already admitted the blood test result. To that point, defense counsel, once the evidence is in and being considered, defense counsel doesn't really have a reasonable argument he could make at that point that the evidence that has been admitted was sufficient to establish his blood alcohol content. Before that, however, he was trying to keep the evidence from coming in. Well, I don't see that, you see. I'm trying to get you to show me where I'm wrong. It's the point. I can't see it. It looks to me like there's eight different ways that this went into evidence without any objections. In fact, it was stipulated to, it was agreed upon, it was judicial notice was taken. I don't know what else needs to be done. I mean, where am I wrong? You're wrong, Your Honor, in concluding that this was stipulated to. I mean, we've already talked about these subjects. The stipulation with regard to the whole blood level was a stipulation to the conversion factor, not the ideal. It wasn't in the stipulation that it was limited to the conversion factor. You see, this is now what you're concluding, but I don't see that to be the fact, and I just want you to enlighten me and show me where I'm wrong. I don't see it. When the state sought to introduce the records of the blood alcohol test results, they specifically sought to admit them, not according to a prior stipulation, but they just offered them into evidence. At that point, the trial court solicited potential objections from defense counsel. Defense counsel offered one, saying that Narcadas hadn't supplied a unit of measurement for the test results yet, at which point there was this long go-around as the state attempted to produce those results. It's clear from that behavior that the parties, the court and the court, both thought at that point that the test results weren't in evidence yet, and defense counsel was, in fact, disputing whether or not they should be allowed into evidence. I don't know. I see nine different ways where they got it into evidence, and you're telling me that that's not true. I'm sorry, I can't see it. It's like talking about apples and oranges or making a pea an elephant.  This was admitted into evidence nine different ways. Your claim is the first prong of the plain error? Yes. Not a fundamental error. Not a fundamental error. The issue is that blood alcohol content is an element of the offense with regard to counts one, three and six. Sure, but your argument for us to review it is under the first prong, that the evidence was closely balanced? Yes. All right. What was the other evidence? I mean, I think that Justice Gordon is correct that there were a lot of stipulations. By the time it got around to the close of the case, the lawyer kept saying, you know, Judge, our position is that he was not the driver. We agree he had the blood alcohol. He said that multiple times. He said that. I don't think you can get around it. So the position of the defense, you know, after all was said and done, was that there's no question that he had this blood alcohol content, but we are of the opinion that the state has not established he drove that vehicle. Right? So how is this closely balanced? Was there any evidence that's contrary? Did the other person that was in the car with him, I don't know, were they called or something? There wasn't any other evidence, was there? Other than the states, is what I'm saying? The defense didn't put on any evidence, did they? I'm trying to remember. I think that they stipulated a gregarious testimony. I'm not sure off the top of my head because it's not, you know, closely related to the issue of what his blood alcohol content was. Okay, but no, your first hurdle is that you have to convince us that the evidence was closely balanced. Yes, and the evidence was closely balanced on the issue of blood alcohol content. Okay, but how can you say that after the lawyer tells the judge multiple times, you know, we're not contesting the alcohol. We're contesting whether he was actually the driver. Well, as you put it earlier, after all is said and done, and it's importantly after the error has occurred, after the blood test results have been allowed into evidence, responding to an error and, you know, tailoring your case after an error has occurred doesn't affirmatively cause the error and doesn't, like, retroactively weigh the error. You're saying the evidence is closely balanced because there was really never any evidence that it was his blood that went into the tooth, and then came back later and there was some medical report saying that it was 3.5, whatever it was, you know, decibels per liter or something. Yeah, grams per deciliter. It was closely balanced because the only evidence regarding his blood alcohol content, you know, specifically, should not have been admitted based on the foundational evidence that was supplied, and if it's not there, the conviction isn't possible. But how do you get around when defense counsel says that the state was, you know, look at the words of the defense counsel. The state was able to establish my client had a breath alcohol concentration over the legal limit, but they did not establish a prima facie case that he was the driver. Yeah. I mean, well, nobody's talking about any error. Nobody's talking about any problem with the breath alcohol concentration being over the legal limit. He's admitting to it. Yes. I mean, it's already been forfeited at that point. It is forfeited. He's admitting to it. He's saying that's what it is. That's a fact. I agree. The evidence is already into the evidence at that point. The records have already been admitted. Well, assuming there were no records, assuming there were no records, and the lawyer admits that his client's breath alcohol concentration was over the legal limit, can he do that? Yeah. He could do that. Well, that's what he did. Yeah, but he's doing it in light of the fact that there was an earlier error in the admission of these records without sufficient. Well, doesn't he forfeit the error then when now all of a sudden he makes an admission? Well, I mean, he's already forfeited the error by failing to object to it when it occurs, but he doesn't somehow additionally waive or reverse it. Isn't he inviting an error? Isn't the invitation of error? No. Again, inviting error refers to actions by a party that cause an error to occur. Or acquiescence. There's a little more to it. Well, acquiescence, again, has to involve some kind of affirmative conduct Okay, is this affirmative conduct? This is what defense counsel repeats in closing. The state presented evidence showing that my client had a BAC over the legal limit. That's not a dispute, Judge. And, of course, there's no question regarding intoxication. That's not an issue as defense concedes. How is that not affirmative conduct? It's affirmative conduct, but it's not conduct that caused the error. It's conduct that's responding to the earlier error. If you want to have an argument of invited error or acquiescence, these are species of the general doctrine of equitable estoppel. When you engage in a certain sort of behavior and a party relies on your behavior, you can't then sort of attack their response to your behavior as being inappropriate. Well, didn't the state put them in that position? Didn't they actually have a little bit of a brief off-the-record conversation or something where just before that the state said, Judge, could we have a continuance? Was there something about that? Okay, we'll call the nurse. Didn't they say something like that? There was something going on during the middle of when Nortado's had his breakdown and he was unable to recite a measurement. He said he didn't understand. Yeah, he didn't understand. At some point they take a break there. It's unclear what happens off-the-record. Yeah, but before that, didn't the state offer to continue the case for a day and they'd bring in the nurse? I mean the person who drew the blood. In this case, didn't they do that? Didn't they offer? There was a question of whether he was going to stipulate, and they said, okay, Judge, am I wrong? Is there something off-the-record? I remember somebody mentioned it. No, I don't. Maybe it's another case that we have to look at. I don't know. We'll take a reassessment. We'll take a continuance, Judge. We can get this nurse in, the other nurse or the lobotomyist, whatever. I think at one point one of the assistant state's attorneys may have suggested something like that, but I don't believe that there was any sort of specific response to it by defense counsel or the court. And eventually the testimony just came in when he was able to supply a unit of measurement. If you had a situation where a person said, look, we'll get a phlebotomist in here, we'll have somebody testify to what was actually put on it, and defense counsel responded, no, that's okay, you can go ahead, then, yeah, you definitely have invited error because, again, it's a species of equitable stopper. He's saying that doing what you're suggesting that you can do right now is okay, and then you can't then turn around and say, no, it's not okay, despite the fact that I said it was okay. Well, I don't know, for some reason I got the impression that that's kind of what happened here, that they were willing to stop, have the case continue for whatever day or so, get in the other person if this was going to be a big deal. Okay, I mean, for all I know, the state may have been willing to do that, but defense counsel didn't invite them to do that or behave in some sort of way that caused them to do that or invited them to not do that. Okay, Mr. Weiner, I know you wanted to reserve a few minutes for rebuttal. Thank you, Your Honor. Thank you. Ms. Cook. May it please the court, counsel, as Justice Gord noted, this case is absolutely replete with the very simple fact that the defense in this case was that the defendant wasn't the driver. And now, on appeal, appellate counsel is attempting to launch into a whole new theory and a whole new defense and have that gotcha moment, as Justice Fork noted earlier. And, in fact, it's not just the closing arguments where defense counsel finally realizes he has to admit the driver. That's absolutely not the record in this case. Let's look at the motion to quash arrest. When defense counsel said, the issue at the time that he placed my client under arrest and charged him with DUI and other offenses did the officer have probable cause to believe that my client was driving any motor vehicle on the date and time in question? My client wasn't driving the vehicle that night. And the solid defense continues. In opening statement, the evidence, I believe, is going to show you very clearly that there is a reasonable doubt as to who was driving the striking motor vehicle that night. And the main reason I believe that there is a strong, reasonable doubt that the driver was not our client is because the police investigation in this matter will show through testimony was abysmal. Defendant's leg was in a cast up to his knee. The defendant had just had major surgery with screws in place. He needed a crutch to walk. Can I interrupt you for a moment? Yes. One of the complaints, Mr. Weamer, is that there was no testimony really identifying the defendant's blood going into the tube. But in your brief, and you cite the record, you say Kim Conway Cisneros Yes. performed defendant's blood draw using Castile soap and a non-alcohol prep. Nurse Cisneros labeled the vials and dated them. And defendant's blood standard was sent to the lab for testing via a tube station. But is that some kind of a summary? Or is there actually So he's saying that this really wasn't established. But the way I read this statement in your brief, you're saying that she said Kim Conway Cisneros, that defendant's blood, did she say defendant? Do you remember this particular part of the record? Yes. And it was all part of, maybe it wasn't as precise as we'd like it to be now, the whole import of the testimony from Nurse, I'm going to mispronounce his name, Nantites. I'm terrible with the names on this brief. Nurse Nantites testified that Nurse Cisneros, that he witnessed her taking the blood draw from a defendant and in the context in which it was offered, the defendant's blood was in the tube, it was labeled, and up the tube station it was. So you're saying the stipulation is somewhat of a red herring because we also have testimony establishing all of the components that we need to establish defendant's blood. Yes. So Nurse, yes, whatever, whatever, when you described this in the brief, and now I remember, that person was alive with this. He testified that he was there when Kim Conway Cisneros, yes, and your suggestion, though, is that somewhere in this section of the record it would be inferred that this was his blood that was going into that test tube. Absolutely. All right. Well, we'll have to look at the record. Yeah. That was pretty clear, and as noted by this Court many times, has never been subject by trial counsel to be the basis of any complaint because the defense was defendant wasn't the driver. Do we look at an error under the first prong if the evidence isn't closely balanced? I mean, some courts say first we have to determine an error. Some courts have actually analyzed the evidence first, said it's not closely balanced, then they don't even get to the error. Right. Now, would you argue that this evidence was closely balanced? I'm not even getting to that. Because of the affirmative acquiescence in this case, you don't get plain error review. Okay. Well, that really wasn't my question, so whatever. My question was would you agree or disagree that the evidence was closely balanced? It wasn't closely balanced. Wasn't there the testimony of the taxi cab driver, the Uber driver? Mr. Rosario? But didn't he go back and forth? Yes. Like at some point he saw him driving, and then he came in and said he didn't see him driving? Yes. Is he the only one who put defendant behind the wheel? Affirmatively, yes, he was. He was the only eyewitness that testified to that, and it's, again, cold records on appeal can be confusing. I couldn't understand if there was a language barrier, if he was confused, but he testifies on behalf of the defense, so the defense does, in fact, present a witness, Justice McBride, in the notion that the defendant wasn't the driver. Mohamed Rosario testifies that he saw two men getting out of the car, the silver Lexus that the defendant, the striking vehicle, was. The officer was on the scene. Yes. Lazo. Yes. He said he saw a defendant wearing a light-colored shirt, walking away from the driver's side of the vehicle. Right. No one else was near the Lexus. Right. The squad car video was played for the trial court, which is depicted in the right-hand corner of the video, the defendant in the white T-shirt, walking away from the silver Lexus, which was upon the sidewalk. Right. There's a lot of evidence that the defendant was the driver. Officer Johnson, who's actually the first one on the scene, testified that the defendant was standing on the driver's side of the car, but toward the rear of the car, and that nobody else was around. And this is later on at night. And when he asked the defendant what happened, the defendant said, I wasn't driving. He said he had a friend who was driving, but there was nobody at the scene that could have been. And he had these things that the defendant was stating. When Officer Johnson asked the defendant at the scene which way he was driving, the defendant actually said, and I quote, I was driving that way. And then he said, oh, I mean, I wasn't driving. The only airbags that had deployed in the, we'll call it the striking vehicle, were on the driver's side. The passenger side airbags had not been deployed. The defendant had a forehead abrasion that Officer Johnson, paramedic Eason, and the nurse all testified were consistent with the deployment of an airbag. And then when Officer Johnson confronted the defendant at the scene with his suspicions that he believed the defendant was the driver, the defendant completely shut down. He said, I'm not going to play these games anymore, and refused to cooperate. So there's plenty of evidence that the defendant was the driver. And then Officer Lazo shows up and said he saw the defendant walking away from Were there any field sobrieties done at the scene? I'm sorry? Were there any field sobrieties done at the scene? No. The defendant had a significant leg injury on his left leg. He was in a cast from some surgeries. Where plates and screws and things had been done. He testified, or he stated at the scene that he had been taking Percocet. He told Officer Johnson, I've taken Percocet. I've had a couple of drinks. And there were crutches in the back seat of the car. Evidence that defense counsel used once again to highlight the whole defense. That shows my client wasn't the driver. The whole notion of the defendant's injuries were used, by defense counsel, to advance the notion and the only defense, it doesn't matter what his blood alcohol was, he wasn't the driver. So there's plenty of evidence that the defendant was driving the car. There's plenty of evidence that the defendant was in fact intoxicated. And there's plenty of evidence about defendant's four prior DUI convictions, and the fact that his driver's license was revoked. So we met every element of the crimes beyond a reasonable doubt. And as far as the admission into evidence about 501.4, we met the requisite foundational requirements by showing that the chemical test performed on the defendant's blood was in fact ordered in the regular course of business at the hospital, ER treatment, that those tests were performed by the lab routinely used by that hospital, and the defendant's affirmative acquiescence of those were, is very clear on DD44 through 45 as noted, when the judge asked defense counsel, is there an objection to the admission of defendant's blood records, and he said, judge, no, I believe the foundation was laid. Now in his reply brief, defense counsel is incorrectly advancing all kinds of cases about the fact that we have a chain of custody issue, because we haven't established where these vials of blood have gone. But those cases are completely inapplicable, because 501.4 does not require the state to prove a chain of custody, because the blood was taken through the hospital, and we never had access to it. The police never had possession. And Justice McBride, as you noted in Hutchinson, Henderson and Latch, for admissibility under 501.4, the state only needs to meet the statutory foundational requirements. Chain of custody is not required. Henderson held it would be logically absurd for us to require the state to prove chain of custody under 501.4  and never in the state's custody. And that case, of course, is cited properly by Hutchinson, which is absolutely indistinguishable from the facts of this case. The only time there was ever an objection about anything to do with the defendant's blood in this case came only after those medical records were in, and the state was trying to get the conversion from the serum alcohol into the BAC. That is the only time defense counsel lays a foundational objection to the conversion. And then finally the nurse realized what the DL of vacillators was, and that testimony came in, and defense counsel then affirmatively withdraws his objection at DD64. So we have the hospital records in. We have the testimony of the conversion. We have the stip that the defendant's serum alcohol level converted to whole blood was .259, and this record is beyond replete with the fact that defense counsel was never challenging the blood testimony. Again, at the motion for a directive finding, it was based on the fact that the state didn't prove defendant was the driver. Nothing about blood was ever mentioned by defense counsel at the motion to quash in opening statement at the motion for a directive finding in closing. And I will once again close with defense counsel's closing argument. The state presented evidence showing that my client had a BAC over the legal limit. That's not a dispute, judge. The issue is not whether or not he had alcohol in his system, not whether or not he admitted to taking Percocet, because that, again, could be explained from evidence heard at trial. This court should absolutely reject defendant's attempt to launch into an entirely new contrary theory on appeal. This is a court of appellate review. We are bound by this record, and we are not in a position to retry cases using alternative theories on appeal using the GATSHA method. For all the reasons argued today and for all of those reasons in our brief, the people respectfully request that this court affirm defendant's fifth DUI conviction. Thank you, Ms. Cook. Mr. Weimer, brief rebuttal. Thank you, Your Honor. A couple quick clarifications. First of all, there seems to be some of the questions seem to suggest that the parties were disputing whether or not there was an issue as to whether or not Henderson's blood was in the, you know, vial in the ER itself. That's not a dispute. Nartadus testified they saw her draw the blood from him, so that's his blood in that vial. The issue is whether or not that vial that then goes out of the room is the same vial that's received and tested and reported on by the lab. Closing counsel, at one point stated- But didn't the medical records come in, and that's where the information is coming from? It's really not that vial. Isn't that what Henderson- Not Henderson. Is that Henderson? Hutchinson. Isn't that what we said? The medical records came in. And the medical records are what say what's the blood alcohol. Yes, they- It really wasn't about the two. Once the medical records are properly admitted, the two kind of goes by the wayside, doesn't it? Correct. Again, if you hold that, you know, Section 11-501.4 allows you to dispense with the traditional foundational showing. Okay. But, you know, that's our argument. What about Caffey? I don't think you mentioned that earlier. Caffey? People versus Caffey. That's where the Supreme Court said that, you know, even if you don't stipulate, when you sufficiently acquiesce and you say there's no objection, they never even get the plain error. So how would you respond? That's the state's argument. They say forget the plain error, you acquiesce. Caffey, the Supreme Court said, we're not going to allow this. We're not even getting the plain error. Again, as, you know, mentioned during the initial arguments and in the briefs, acquiescence requires more than just, you know, failing to make a proper objection. Failing to make a proper objection is the realm of forfeiture. And more generally, I mean, yes, it is obvious that defense counsel was generally, in this case, planning a defense that was going to be centered on disputing who was driving the car. But nonetheless, even if that was, you know, defense counsel's focus, choosing to focus on some elements of the state's case doesn't relieve the state of its affirmative obligation to prove every element of the offense. And not objecting to a lack of, you know, necessary foundation doesn't relieve the state of its obligation to provide that. And so, you know, I think it's important to note that, you know, the state's obligation to permit a, you know, jury to conclude that an object is what a party purports it to be is an obligation that's on a party before anybody objects. And the state was aware of it here. The error is plain, and consequently, the case should be remanded to the trial court. If that's gotcha, then the state has got. Unless the court has any other questions? No. Thank you, Mr. Warner. The court will take the matter under advisement and issue an order as soon as possible. Thank you both. Thank you. Good morning. Good morning. Can the attorneys on Max v. CTA approach the podium and identify yourselves for the record, please? Good morning, Your Honor. Good morning. Attorney, hello.